William R. Hamberg and Edwina Hamberg v. Commissioner.
Hamberg v. Commissioner
Docket No. 2570-65.
United States Tax Court
T.C. Memo 1967-29; 1967 Tax Ct. Memo LEXIS 229; 26 T.C.M. (CCH) 151; T.C.M. (RIA) 67029; February 16, 1967
Myron E. Anderson, Idaho Bldg., Boise, Idaho, for the petitioners. John D. Picco, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1959 in the amount of *230 $3,694.99. The only issue for decision is whether the transfer of certain property and money by one Florence Murray to the petitioners resulted in taxable income to the petitioners or whether the transfer was nontaxable as a gift. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. William R. Hamberg (hereinafter sometimes referred to as William) and Edwina Hamberg (hereinafter sometimes referred to as Edwina), husband and wife, are residents of Priest River, Idaho. They filed their joint Federal income tax return for the year 1959 with the district director of internal revenue at Boise, Idaho. (William and Edwina will also be hereinafter sometimes referred to collectively as petitioners.) William is a retired civil service employee. Prior to his retirement in October 1959, he had been employed at the Fairchild Air Force Base. While working at the base, he maintained and occupied an apartment in Spokane, Washington, returning to Priest River on the weekends. Edwina spent the greater part of the time at the family home in Priest River. For many years *231 there had existed a warm personal friendship between the petitioners and John and Florence Murray (hereinafter referred to as John and Florence). William and John had been acquainted since approximately 1900. From the date of the marriage of petitioners in 1940, they often socialized on a regular basis with John and Florence. In 1947, Florence had acted as godmother at the baptism of petitioners' daughter, Sandra. Since the death of John in 1954, the friendship between petitioners and Florence has continued and Florence often relied upon William for advice and counsel. In 1955, Florence executed a will naming William as executor. In 1957 she executed a second will, and at William's request named another person executor. The record does not disclose the nature of her testamentary dispositions nor the beneficiaries named in her 1955 and 1957 wills. On March 9, 1959, Florence made a third will, naming Madelyn Luckey as executrix. This will provided, (in part, as follows: I hereby declare that I am a widow and that my husband, John J. Murray, died about five years ago, and that I have no children. FIRST: I direct my executrix hereinafter named to arrange for my funeral * * *. *232 SECOND: I direct my executrix to pay all my just debts and funeral expenses * * *. THIRD: I direct that from the monies that I have on deposit at the Newport Branch of the National Bank of Commerce of Seattle shall first be paid the amount described in the second provision above, then the further sum of $150.00 shall be used by the executrix for the purpose of instituting proceedings for the probate of this my Last Will and Testament, and the remainder thereof I give and bequeath as follows: (a) To Nona Murray, my sister-in-law, who resides at 405 E. 7th Avenue, Spokane, Washington, five-eleventh's of said remainder; (b) to Lee Nacaarato, of Priest River, Idaho, one-eleventh of said remainder; (c) to June Prill of Priest River, Idaho, one-eleventh of said remainder; (d) to Gloria Bauer, of Priest River, Idaho, one-eleventh of said remainder; (e) to Harold Luckey, of Priest River, Idaho, one-eleventh of said remainder; (f) to Claudia Luckey, of Priest River, Idaho, one-eleventh of said remainder; (g) and to Sandra Hamberg, of Priest River, Idaho, one-eleventh of said remainder. FOURTH: I give and bequeath to to Gloria Bauer the dinette set located in my home. FIFTH: *233 I give and bequeath to Dorothy Peloquin, of Priest River, Idaho, the writing desk located in my home. SIXTH: I give and bequeath to Marjean Duley, of Priest River, Idaho, the automatic washer located in my home. SEVENTH: All the rest, residue and remainder of my estate, real, and personal, of every kind whatsoever, and wheresoever situated, I give, devise and bequeath to Madelyn Luckey of Priest River, Idaho. All of the beneficiaries named in the will dated March 9, 1959, with the exception of Nona Murray, were friends or neighbors. [1] No provision was made therein for either William or Edwina. On August 31, 1959, Florence entered Bonner County General Hospital at Sandpoint, Idaho, at the request of her physician. Sandpoint is approximately 25 miles from Priest River. On September 16, 1959, she was released from the hospital and admitted to the Sandpoint Manor Rest Home at Sandpoint. While there she was under the supervision of her physician and was attended by a nurse. She disliked the rest home and complained about the treatment which she received there. During October 1959 she communicated *234 with the petitioners in four separate letters concerning her desire to leave the rest home. In all but the last letter, Florence stated, in effect, that if petitioners would secure her release and provide her with a home she would pay them, and in the first letter dated October 5, 1959, stated "I will pay you well and change my will so that you will get everything." On October 7, 1959, petitioners visited Dar Cogswell, an attorney in Sandpoint. Petitioners related the circumstances concerning Florence, namely, that they contemplated obtaining her medical release and taking care of her, and that she had expressed an intention to transfer her property in consideration therefor. Petitioners also checked with Florence's physician concerning her, and he issued a certificate for her release. On that same day, she was released from the rest home and moved into the petitioners' home. Prior to going to their home, petitioners took Florence to see Cogswell. Both parties informed Cogswell of their intention to execute an agreement providing for the transfer of Florence's property to petitioners in exchange for her future care and maintenance. They requested Cogswell to prepare the necessary *235 legal documents to effectuate this intention. Both Florence and William wanted a written agreement so that her future care would be assured. Petitioners and Florence thereupon executed an agreement providing for the transfer of her property in exchange for the petitioners' promise to care for and maintain her. The agreement, dated October 7, 1959, provided in part as follows: THIS AGREEMENT Made this 7th day of October, 1959, between FLORENCE MURRAY, a widow, party of the first part, and WILLIAM R. HAMBERG and EDWINA HAMBERG, husband and wife, parties of the second part, WITNESSETH: WHEREAS Party of the first part has arrived at an advanced age in life and desires to live with the parties of the second part in their home where she can be comfortable for the remainder of her life. NOW THEREFORE The said party of the first part hereby transfers and promises to transfer to the said parties of the second part, all of her property, both real and personal, wherever situate and of whatever kind and character, upon the agreement of the parties of the second part to furnish to her a comfortable home with the said parties of the second part. This agreement is made as the free and voluntary *236 act of Florence Murray, a widow, party of the first part, and at her suggestion and request. This agreement imposed upon the petitioners an obligation to care for and maintain Florence for the duration of her life, [2] and pursuant to it, petitioners received the following consideration: Savings account, Idaho First Na-
tional Bank, Priest River
$ 1,400.00
Savings account, Bank of Com-
merce, Newport, Washington
3,374.82
Checking account, Bank of Com-
merce, Newport, Washington
2,535.83
Vendor's interest in Roberson
contract
1,222.60
Real property
3,500.00 [1]
Furniture and fixtures
500.00 [1]
$12,533.25
Florence conveyed the items of property to petitioners by proper methods of transfer. The realty was conveyed by warranty deed and the realty subject to the contract of sale to Roberson by quit claim deed. Both instruments described the consideration for the transfer as "LOVE, AFFECTION, CARE, SUPPORT AND MAINTENANCE." The Roberson *237 contract of sale was assigned to petitioners under a separate document entitled "ASSIGNMENT OF CONTRACT," which described the consideration as "my care, support, maintenance, and whatever else may be necessary to make me reasonably comfortable during my lifetime." Having effected the transfer of all her property to the petitioners, Florence then destroyed her will dated March 9, 1959, in the presence of the petitioners. When Florence came to the petitioners' home on October 7, 1959, she was 86 years of age. She resided there until her death on October 21, 1959. Despite her advanced age, her death was somewhat unexpected, since her physician had stated to petitioners on October 7, 1959, that her physical condition was such that she could live an indeterminate number of years. During this brief period petitioners paid out the following amounts in caring for Florence and paying her funeral expenses: Her physician
$ 44.00
Powell (a physician)
10.00
White Cross Drug
5.00
Funeral arrangements
50.00
Moon Funeral Home
767.25
One night dress
2.98
Two weeks' care before death (est.)
60.00
$939.23
Soon after Florence's death on October 21, 1959, Madelyn Luckey, *238 the executrix named in the will which Florence had destroyed, instituted probate proceedings in the Probate Court of Bonner County, Idaho, and filed a copy of the destroyed will with the Court. Petitioners employed Cogswell to represent them in connection with the probate proceedings and initially they appeared in the proceeding to contest the admission of the will to probate. Subsequently, however, petitioners decided not to contest the admission of decedent's will and withdrew from the proceeding. After a hearing and consideration of the evidence adduced therein, the Probate Court, in September 1962, entered an order admitting the will to probate. There has been no appeal from the order of the Probate Court admitting decedent's will to probate. In 1962 or 1963, Madelyn Luckey, the executrix of the estate of Florence Murray, deceased, filed a complaint against the petitioners in the District Court of Bonner County to set aside the property transfers and to recover the property transferred to the petitioners on October 7, 1959. The litigation in the District Court of Bonner County is still pending. The case has not been set for trial, and the District Court has not determined the *239 validity of the agreement dated October 7, 1959. Petitioners, on their return for the taxable year 1959, did not include in their gross income any part of the value of the properties received from Florence, nor did they deduct any of the expenses paid by them in caring for her or in arranging for her funeral. Respondent, in his statutory notice of deficiency, determined that the fair market value of the property received, less the expenses incurred, constituted ordinary income of the petitioners. Ultimate Findings The transfers of property and moneys involved in this case were made pursuant to a valid binding contract. The transfers of property and moneys to the petitioners were made by Florence in contemplation of receiving future services from the petitioners. The transfers of property and moneys under the agreement dated October 7, 1959, resulted in taxable income of $11,594.02 to the petitioners in the taxable year 1959. Opinion The sole issue for determination is whether the property and money transferred to the petitioners gave rise to taxable income within the meaning of section 61(a) [3] or was a nontaxable gift within section 102(a). [4]
*240 Initially petitioners argue that the transaction was nontaxable as a part purchase, part gift transfer, relying on the concept of "gift" found in section 2512(b) of the Gift Tax. [5] We cannot agree. The present controversy involves the application not of the gift tax but of the income tax laws and though a transfer may be considered a gift sufficient to warrant the imposition of the gift tax it is not per se a gift, as to fit within the exemption of section 102 of the income tax. Though under section 2512(b) of the Gift Tax any transfer for less than adequate and full consideration shall be deemed a gift, the Supreme Court has stated that, in the context of income tax, "a voluntary executed transfer * * *, without any consideration * * * therefor, * * * is not necessarily a 'gift' within the meaning of the statute." . (Emphasis supplied) *241 Moreover, the Supreme Court in the Duberstein case set forth the criteria for distinguishing between the receipt of a gift and the receipt of income in an income tax context. They noted that: [In] this regard, the most critical consideration, * * * is the transferor's "intention." * * * "What controls is the intention with which payment, however voluntary, has been made." * * * [] A gift in the statutory sense, * * *, proceeds from a "detached and disinterested generosity," * * * "out of affection, respect, admiration, charity or like impulses." * * * [] [However] if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, * * * it is not a gift. * * * [] The issue, therefore, is essentially one of fact. The petitioners have argued that Florence's dominant motives in making the transfer were love and affection. Again, we cannot agree. Florence's primary concern at the time of the transfer was to *242 provide for her own future care and maintenance and to this end she and petitioners executed the agreement dated October 7, 1959, which is set forth in the Findings of Fact. This agreement, and the property transfers subsequent thereto, coupled with the physical destruction of her will (in which petitioners were not listed as beneficiaries) lead us to the conclusion that Florence acted not from any sense of detached or disinterested generosity but rather to secure for herself the economic benefit of petitioners' written promise to care for and maintain her for the remainder of her life. See, . Also, as indicative of Florence's intention, the record reveals that in her correspondence to William, prior to her release from the rest home, she made constant reference to the fact that if they would secure her release from the rest home and supply her with a home she would pay them. In addition, the individual transfers of property by Florence were pursuant to her agreement with petitioners dated October 7, 1959. In the absence of any contrary evidence, we have concluded that this agreement legally bound the parties, that is, having *243 received petitioners' promise of future care and maintenance, Florence was under an obligation to transfer the property to them. In this sense, it can be said that the payment to petitioners proceeded primarily from the constraining force of a moral or legal duty and as such it cannot be said to be a gift. See, Because on our analysis of the facts before us, we have concluded that no gift was intended, we need not consider further petitioners' theory that the transaction was in reality a part sale, part gift transfer. Finally, petitioners urge that the payments are not conpensatory income in that they never intended to make a profit in caring for Florence. Suffice it to say that under the rule of the Supreme Court's decision in , the concept of gross income in section 61(a) is sufficiently broad in scope to encompass the situation before us. As was noted therein: Here we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion. * * * We would do violence to the plain meaning of the statute and restrict *244 a clear legislative attempt to bring the taxing power to bear upon all receipts constitutionally taxable were we to say that the payments in question here are not gross income. * * * We therefore hold that the transfers resulted in taxable income of $11,594.02 to petitioners within the meaning of section 61(a). Decision will be entered under Rule 50. Footnotes
1. Nona Murray was Florence's sister-in-law. Sandra Hamberg is petitioners' daughter.↩
2. There also appears to have been an informal understanding that petitioners would pay Florence's burial expenses.↩
1. In the notice of deficiency, respondent had valued the realty and furniture and fixtures at $7,000. ↩
3. SEC. 61(a). General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, * * * ↩
4. SEC. 102(a). General Rule. - Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩
5. SEC. 2512(b). Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.↩